## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Zachary Britt, a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), being duly sworn, states:

## ITEMS TO BE SEARCHED

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—electronic devices—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B. Specifically, this affidavit is being submitted in support of an application for a search and seizure warrant authorizing the search and seizure of the following: Apple IPhone 6S cellular telephone, IMEI 355689076835553, and any SIM or memory card (herein after **Subject Electronic Device 2**); Apple IPhone 6S Plus, IMEI 355734071456912, and any SIM or memory card (herein after **Subject Electronic Device 3**); Apple IPhone 5, IMEI 358814054081569, and any SIM or memory card (herein after **Subject Electronic Device 4**) - described more fully in Attachment A. The items to be searched are believed to contain and conceal items that constitute evidence of violations of Title 21 U.S.C. § 846, Conspiracy to Distribute and Possess with Intent to Distribute a Controlled Substance, and Title 18 U.S.C. § 924(c), Possession of a Firearm in Furtherance of a Drug Trafficking Crime. **Subject Electronic Devices 2** through **4** are currently in the custody of the ATF.

2. The applied for warrant would authorize the forensic examination of **Subject Electronic Device 2, Subject Electronic Device 3, and Subject Electronic Device 4** for the purpose of identifying electronically stored data particularly described in Attachment B and using the protocols described in Attachment B by members of the ATF, or their authorized

1

representatives, including but not limited to other law enforcement agents assisting in the above described investigation.

## AGENT BACKGROUND

3. I am a Special Agent with the ATF and a law enforcement officer of the United States within the meaning of Section 2510 (7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, federal felony offenses, including violations of Title 21 U.S.C. §846 and Title 18 U.S.C. § 924(c). Your affiant is, and has been a Special Agent with the ATF since March 2016. Since October of 2016, your affiant has been assigned to Hyattsville I Field Office in the Baltimore Division, which investigates violations of federal drug, alcohol, tobacco, and firearms statues. I have been involved in investigations involving unlawful activities to include drug smuggling/trafficking, firearm offenses and/or firearm trafficking, and violent crime occurring in the District of Maryland. I have executed, and or participated in numerous search and seizure warrants for illegal narcotics, firearms, and related paraphernalia. I have arrested and/or participated in multiple arrests for violations of state and/or federal narcotics and firearms statutes. In my capacity as a Special Agent of the ATF, I am authorized to obtain and serve federal search warrants.

4. This affidavit is submitted in support of a search warrant to search cellular telephones previously seized as evidence of a crime. The items to be searched are believed to contain and conceal items that constitute evidence of violations of Title 21 U.S.C. § 846, Conspiracy to Distribute and Possess with Intent to Distribute a Controlled Substance, and Title 18 U.S.C. § 924(c), Possession of a Firearm in Furtherance of a Drug Trafficking Crime.

5. Because this affidavit is being submitted for the limited purpose of establishing probable cause for a search warrant, I have not included every detail of every aspect of the investigation. Rather, I have set forth only those facts that I believe are necessary to establish probable cause. I have not, however, excluded any information known to me that would defeat a determination of probable cause. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents, police officers, witnesses, cooperating sources, telephone records, and reports. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6. Based on my knowledge, training, and experience, I know that individuals involved with the distribution of controlled substances frequently use cellular telephones, communication devices, and other electronic media storage to further their illegal activities. Based upon your affiant's knowledge, training, and experience, and participation in this and other investigations involving the distribution of controlled substances, I know the following:

    a. The fruits and instrumentalities of criminal activity are often concealed in digital form. Furthermore, digital camera technology is often used to capture images of tools and instrumentalities of pending criminal activity. Cell phones have both digital storage capacity and digital camera capabilities.

    b. Individuals involved in the distribution of controlled substances often use digital storage devices to maintain telephone number "contact lists" of individuals who may have assisted in the planning of this and other criminal activity and sometimes take photographs of themselves and/or co-conspirators.

3

    c.    Individuals who possess or own handguns or other weapons frequently photograph themselves holding the handguns or other weapons.

    d.    Photographs on a suspect's digital device sometimes show the suspects(s) handling proceeds or other property received from the distribution of controlled substances.

    e.    Individuals who engage in the distribution of controlled substances often use cellular telephones to communicate with co-conspirators via phone calls and text messages.

    f.    Cell phones often record the phone's historical location data.

## PROBABLE CAUSE

7.    Members of the ATF and Anne Arundel County Police Department (AAPD) are currently conducting a joint investigation into a drug trafficking conspiracy led by Christian THOMAS. During the course of the investigation, law enforcement officers interviewed a cooperating witness ("CW-1"). During multiple interviews, CW-1 stated that, from approximately 2014 until at least 2016, CW-1, Christian THOMAS, and Calum THOMAS distributed drugs in and around Annapolis, Maryland. According to CW-1, the THOMAS brothers distributed cocaine, marijuana, and heroin, among other drugs. The THOMAS brothers distributed drugs from various locations, including a vacant residence and 7-Eleven convenient store near their residence. As part of the conspiracy, CW-1, Christian THOMAS, and Calum THOMAS robbed drug dealers and drug customers for drugs and drug proceeds and also burglarized homes to steal drugs. In the summer of 2016, CW-1 had a falling out with Christian and Calum THOMAS over a drug debt.

8.    During the course of the investigation, law enforcement officers seized the cellular phone of one of Christian THOMAS' drug customers. Officers conducted a forensic download of the cellular phone, which revealed several text message conversations between Christian

THOMAS, utilizing cellular telephone number (443) 221-8425, and an individual seeking to purchase drugs (hereinafter "customer"). The following are excerpts of those conversations:

*July 5, 2016*:

| | |
|---|---|
| Customer: | Are you good |
| THOMAS: | Yea |
| Customer: | You should totally match |
| Customer: | [She] would buy like a dime & match with it |
| THOMAS: | I don't smoke I told that and plus I have a game today |
| Customer: | We'll could u maybe sell us a dime than |
| THOMAS: | Yea I have to wait till the car gets back and I will be right over! |

*July 15, 2016*:

| | |
|---|---|
| Customer: | And Ur getting a pound right ? Like is it good weed ? Like really really good like ud smoke it cause I might buy an ounce when I get back. Idk if ur selling it like that tho |
| THOMAS: | Yea it's going to be great not good. |

Based on my training, experience, and knowledge of this investigation, your affiant believes that the customer and Christian THOMAS were discussing the sale of marijuana.

Murder of Terry Crouse:

9. On January 2, 2017, at approximately 1:45, AAPD responded to the residence of Joanne and Terry Crouse, located at 1843 Kimberwicke Place, Annapolis, Maryland. AAPD officers located the body of Terry Crouse behind a small shed at the edge of their driveway. T. Crouse was deceased, lying face up, and had multiple gunshot wounds. At the corner of the shed, AAPD officers discovered: (1) four spent .357 caliber casings, (2) eleven live .357 cartridges, and (3) four spent .357 bullets. According to the Office of the Chief Medical Examiner, T. Crouse suffered four gunshot wounds to the head, neck, upper back, and abdomen.

Seizure of Firearm from Calum THOMAS:

10. On January 13, 2017, a Maryland State Police Trooper conducted a traffic stop of

5

an Audi A4, bearing Maryland registration 1CL1313. The Trooper identified the driver and only occupant as Calum Jeremiah THOMAS. Trooper Young detected the odor of marijuana in the vehicle and conducted a search of the vehicle's interior. In a drawer under the driver's seat, Trooper Young discovered a Hermann Weihrauch, .357 caliber Magnum, model EA/R, six-shot revolver, bearing serial number 1093019. According to the Prince George's Firearms Examination Unit, the Hermann Weihrauch, .357 caliber revolver was the same firearm used to kill Terry Crouse on January 2, 2017. Based upon the AAPD homicide investigation, investigators secured an arrest warrant for Calum THOMAS charging him with one count of first degree murder.

Arrest of Calum THOMAS:

11. On January 16, 2017, AAPD investigators observed Calum THOMAS leave his residence, enter a vehicle and drive a short distance from his residence. Calum THOMAS was then arrested on the outstanding AAPD arrest warrant for the murder of Terry Crouse. At the time of his arrest, Calum THOMAS had **Subject Electronic Device 2** on his person. Calum THOMAS was transported to the AAPD Criminal Investigation Division (CID).

Search of THOMAS' Residence:

12. On January 16, 2017, AAPD conducted a search of Calum and Christian THOMAS' residence, located at 14 Washington Drive, Annapolis, Maryland. The residence is a single family home and owned by Cosbeeyoma Thomas. Christian THOMAS was home at the time of the search. During the search, officers discovered a Maverick Mossberg 12-gauge shotgun, bearing serial number MV48764N, in the basement. The shotgun was loaded with four rounds of ammunition. In Christian THOMAS' bedroom, officers also recovered approximately eight 12-gauge shot shells, Christian's passport and social security card, a baggie of marijuana, a digital

6

scale with residue, and two (2) cellular telephones (**Subject Electronic Device 3 and Subject Electronic Device 4**). Christian THOMAS was detained and transported to the AAPD Criminal Investigative Division (CID). At CID, oral swabs were collected from Christian THOMAS and Calum THOMAS.

13. According to the AAPD Crime Laboratory, Christian THOMAS' DNA was recovered from the shotgun's trigger/guard and the forestock.

Arrest of Christian THOMAS:

14. On September 7, 2017, the United States Attorney's Office indicted Christian THOMAS and Calum THOMAS for the following criminal offenses: (1) Conspiracy to Distribute and Possess with Intent to Distribute a Controlled Substance, 21 U.S.C. § 846; and (2) Possession of a Firearm in Furtherance of a Drug Trafficking Crime, 18 U.S.C. § 924(c).

15. On September 07, 2017 at approximately 8:00 pm, members of the AAPD and the ATF located Christian THOMAS operating a 2009 Mercedes Benz, Model C300, bearing Maryland tag 1CZ4411. Officers subsequently conducted a stop of the vehicle near Solomon's Island Road and Jennifer Road and detained THOMAS. Christian THOMAS was the only occupant inside the vehicle. Officers seized an Apple IPhone (Subject Electronic Device 1) from the center console of the vehicle. Subject Electronic Device 1 was secured, placed in Airplane mode, and placed in AAPD custody. On September 15, 2017, Subject Electronic Device 1 was transferred to ATF custody and is pending forensic examination pursuant to a Federal Search and Seizure Warrant, Case No. 17-2543SAG.

16. Law enforcement officers also utilized a drug detecting K-9 to conduct an exterior search of the vehicle. At that time, the K9 alerted to the presence of drugs inside the

vehicle. Officers subsequently searched the vehicle and discovered approximately $586.00 in U.S. Currency, which was located in the center console of the vehicle.

17. Based on the above described investigation, your affiant submits that there is probable cause to believe that Calum THOMAS was in possession of **Subject Electronic Device 2** and Christian THOMAS was in possession of **Subject Electronic Device 3 and Subject Electronic Device 4**, which were involved in violations of Conspiracy to Distribute and Possess with Intent to Distribute a Controlled Substance, 21 U.S.C. § 846; Possession of a Firearm in Furtherance of a Drug Trafficking Crime, 18 U.S.C. § 924(c). Based on my training, knowledge and experience, there is probable cause to believe that evidence of these crimes are contained within **Subject Electronic Device 2, Subject Electronic Device 3, and Subject Electronic Device 4**.

18. **Subject Electronic Device 2, Subject Electronic Device 3, and Subject Electronic Device 4** are currently in the custody of the ATF. In my training and experience, I know that **Subject Electronic Device 2, Subject Electronic Device 3, and Subject Electronic Device 4** have been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as it was when **Subject Electronic Device 2, Subject Electronic Device 3, and Subject Electronic Device 4** first came into the possession of the AAPD/ATF.

## TECHNICAL TERMS

19. Based on my training and experience, I use the following technical terms to convey the following meanings:

a.  Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.  Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c.  Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or

photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

    d.  GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

    e.  PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable

10

Case 1:17-mj-03070-JMC Document 3 Filed 11/21/17 Page 11 of 18
17-3 0 7 0 JMC

storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

      f.    Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

      g.    Pager: A pager is a handheld wireless electronic device used to contact an individual through an alert, or a numeric or text message sent over a telecommunications network. Some pagers enable the user to send, as well as receive, text messages.

      h.    IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most

Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

    i.    Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

20. Based on my training, experience, and research, I know that **Subject Electronic Device 2, Subject Electronic Device 3, and Subject Electronic Device 4** have capabilities that allow it to serve as **a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA.** In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

21. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

22. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device

12

was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

    a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

13

23. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

24. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

25. WHEREFORE, I respectfully request that the Court issue a warrant authorizing members of the ATF, or their authorized representatives, including but not limited to other law enforcement agents assisting in the above described investigation, to search **Subject Electronic Device 2, Subject Electronic Device 3, and Subject Electronic Device 4**, as described in Attachment A, for the purpose of identifying electronically stored data particularly described in Attachment B and using the protocols described in Attachment B.

---
Zachary Britt
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Sworn to before me on this ___ day of November, 2017

---
The Honorable J. MARK COULSON
United States Magistrate Judge

FILED ___ ENTERED ___
LOGGED ___ RECEIVED ___

NOV 21 2017

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

15

17 - 3 0 7 0 JMC

## ATTACHMENT A – DESCRIPTION OF THE ITEMS TO BE SEARCHED

The devices to be searched include:

1. **Subject Electronic Device 2,** an Apple IPhone 6S cellular telephone, IMEI 355689076835553 and any SIM or memory card.

2. **Subject Electronic Device 3**, an Apple IPhone 6S Plus, IMEI 355734071456912, and any SIM or memory card.

3. **Subject Electronic Device 4**, an Apple IPhone 5, IMEI 358814054081569, and any SIM or memory card.

## **ATTACHMENT B**

1. All records on the Device described in Attachment A that relate to violations of Conspiracy to Distribute and Possess with Intent to Distribute a Controlled Substance, 21 U.S.C. § 846 and; Possession of a Firearm in Furtherance of a Drug Trafficking Crime, 18 U.S.C. § 924(c).

   a. Contact between Christian THOMAS, Calum THOMAS and others known and unknown;

   b. Communication relating to the planning, coordination, and execution of the distribution of controlled substances or murder;

   c. Any information related to the distribution of proceeds from the distribution of controlled substances;

   d. Any information relating to the acquisition, possession, and/or use of firearms;

   e. Any photographs, videos, or records depicting an association between Christian THOMAS, Calum THOMAS, and those known and unknown and/or related to the distribution of controlled substances or the murder;

   f. Any information recording Christian THOMAS' and/or Calum THOMAS' schedule or travel;

   g. Any communications, pictures, or other information related to the murder of Terry CROUSE;

   h. All bank records, checks, credit card bills, account information, and other financial records.

17

**17 - 3 0 7 0 JMC**

2. Evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.